373 F.Supp. 1123 (1974)
UNITED STATES of America
v.
Irving DUBRIN et al.
Civ. No. SA-72-CA-346.
United States District Court, W. D. Texas, San Antonio Division.
March 20, 1974.
*1124 Henry Valdespino, Asst. U. S. Atty., San Antonio, Tex., for plaintiff.
Collins B. Cook, Richard B. Moore, Gresham, Davis, Gregory, Worthy & Moore, Leonard Leighton, San Antonio, Tex., Ennis E. Walden, Dallas, Tex., for defendants.

ORDER FOR JUDGMENT
CLARY, District Judge.
This suit was instituted by the United States of America to recover from three original defendants, (Irving Dubrin, Lester A. Meis and William P. Burbridge, hereinafter sometimes called guarantors), a balance due on a loan made by the Small Business Administration, (hereinafter called SBA), to Universal Plastics Company of Texas, Inc., (hereinafter called Universal Plastics), now bankrupt, and which loan (note) was guaranteed by two corporate and three individual guarantors. Universal Plastics was declared bankrupt during 1969.
A guaranty form[1] dated April 24, 1968 was executed by Irving Dubrin and Lester A. Meis in order to secure a part of the April 24, 1968 promissory note in the amount of $225,000, executed by Universal Plastics.
The following words were typed on the guarantee form next to Irving Dubrin's signature: "This Guaranty limited to 5 per cent (5%) of loan," and, adjacent to Lester A. Meis' signature was typed the following: "This Guaranty limited to 45 per cent (45%) of loan."
William P. Burbridge executed a separate guaranty instrument dated April 24, 1968. The Burbridge guaranty form was an identical guaranty instrument, (SBA Form 148 (12-66)), as the one executed by the two other guarantors except that Burbridge's guaranty was an unlimited one, that is, guaranteeing 100% of the Universal Plastics note.
In addition to the above guarantees there were two other 100% guarantors of the Universal Plastics note, Surgical Engineering and Research Corporation, a bankrupt, and Shoulder Savers, Inc.
A "Loan Agreement" (SBA Form 161) was executed on April 24, 1968 by the president of Universal Plastics, William P. Burbridge, and, was attested to by the secretary of said corporation, Irving Dubrin.
An "Authorization" (i. e., Loan Authorization) was prepared by SBA and signed only by W. E. Woodman, Regional Director, SBA on March 1, 1968.
One of the conditions agreed to by the borrower corporation in said Loan Agreement, and, which provision was embodied by SBA in the authorization as a condition of the loan is as follows:
"Borrower to execute an agreement providing that during the life of this loan, it will not, without prior written consent of SBA, make any changes in its management team, limited to officers and directors active in the day-to-day operations of the borrower's business. SBA to receive notification 30 days prior to any contemplated change."
A change in the management team of Universal Plastics was effected during 1968 without the written consent of SBA and without the requisite 30 days notice being given to SBA. The SBA subsequently waived the above notice and consent requirement by a letter furnished to the attorney for the borrower, Universal Plastics. The corporation *1125 continued its operations under the new management team.
Although the guaranty agreement signed by Meis showed on its face that his liability was limited to 45%, the plaintiff elected to assert and did, in fact, only plead in its complaint for recovery of 10% (of the balance due on the note) against the guarantor Meis. Plaintiff asserted a 5% claim on the balance due on said note against Dubrin, and a claim for 100% of the balance due on the note was asserted in the plaintiff's suit against guarantor Burbridge.
The government's claims against guarantors Dubrin and Meis were settled by compromise on February 28, 1974 for lesser amounts than were asserted by the plaintiff in its complaint against these two defendants. Stipulations for dismissal with prejudice dated February 28, 1974 were filed as to these two defendant-guarantors. The Court then entered orders of dismissal with prejudice dated March 1, 1974 as to Dubrin and Meis. Pre-trial and trial to the Court were held against the remaining defendant on March 4, 1974.
William P. Burbridge claims that he is not liable to plaintiff on his guaranty because at the time the loan to Universal Plastics was made he was president and one of the principal stockholders of the borrower corporation, and, that he executed the guaranty aware of, and in reliance upon the requirement of the SBA Loan Authorization that, in addition to the three 100% guarantees, an additional fully fifty percentum of the loan was guaranteed by other individuals, and, secondly, upon the requirement that no change in management (including officers) of borrower would be made without obtaining at least a thirty day prior approval from SBA by the borrower.
In support of his position the defendant cites the 1971 Supreme Court of Texas case, McKnight v. Virginia, 463 S.W.2d 428, where the Court stated:
"After the terms of a guaranty agreement have been ascertained, the rule of strictissimi juris applies, meaning that the guarantor is entitled to have his agreement strictly construed and that it may not be extended by construction or implication beyond the precise terms of his contract (citing Southwest Savings Association v. Dunagan, et al., 392 S.W.2d 761 (Dallas, Tex.Civ.App., 1965, writ ref. n. r. e.)" and citing other cases thereunder.
The guarantor Burbridge alleges that because the term of the SBA Loan Authorization and Loan Agreement (requiring 30 days prior notice to S.B.A. and said borrower's prior consent before effecting a change in the Universal Plastics management team) has been violated, he is not liable on his guarantee. Burbridge urges, additionally, that he is not liable on the guarantee agreement because plaintiff asserted a claim herein in the amount of ten per cent (10%) against Meis although the guarantee agreement executed by Meis shows that Meis guaranteed forty-five per cent (45%) of the loan. Burbridge urges, thirdly, that under no circumstances is he liable for more than 50% of the loan because plaintiff asserted only 15% against Dubrin and Meis on their guaranty of 50% and then plaintiff entered into a compromise settlement with the two guarantors for less than 15% of the amount guaranteed by Dubrin and Meis.
The record does not show nor did the testimony show to what extent Burbridge has been prejudiced or damaged by failure of SBA to require the 30 day notice and give its consent before a change was effected in the management team.
This Court holds that under the leading case on the subject, Clearfield Trust Co. et al. v. United States, 318 U. S. 363, 63 S.Ct. 573, 87 L.Ed. 838, decided in 1943, and followed ever since, in a situation such as the one before the Court, involving an obligation owed to the United States, the case of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, does not apply; therefore, the federal law and not the state law applies in this case.
*1126 Despite the defendant's objections as raised by his testimony, his pleadings and numerous exhibits, none of his allegations detract from the effects of his guaranty, which guaranty the Court holds to be absolute and unlimited. The only limitation or prohibition that the Court places on the guaranty is that the total principal debt can not exceed the original principal sum of the promissory note, that is $225,000.
The United States Court of Appeals for this Fifth Circuit, considering a situation analagous to the case at bar, pronounced that federal law and not state law applies in such situations. United States v. Wells, 403 F.2d 596, 5 Cir. 1968.
In Wells, supra, the United States District Court considered important questions in the administration of the loan program of the Veterans Administration. A specific question, one of first impression, was whether deficiency judgments should have been granted the United States for balances due following foreclosure of mortgages on property sold to non-veterans under the Vendee Account Loan Program by the Administrator of Veterans Affairs.
The loans in question were foreclosed and the sales were confirmed by orders of the district court, but the deficiency judgments for the balances due were denied in each case. The Fifth Circuit Court reversed, stating at page 597:
"We hold that federal law does apply in such situations."
At page 598 the Court stated:
"We have no clear statutory authority for overriding the state law, nor do we have regulations promulgated pursuant to a federal statute as in United States v. Shimer, 1961, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908, cf. United States v. Yazell, 1966, 382 U.S. 341, 352, 86 S.Ct. 500, 15 L.Ed.2d 404. Nevertheless, we think this is a typical situation where under the Rules of Decision Act, 28 U.S.C.A. 1652, Congress had indicated that federal law should be applied to questions of federal rights and liabilities stemming from a federal program. Cf. Clearfield Trust Co. v. United States, 1943, 318 U.S. 363, 366, 63 S.Ct. 573, 87 L. Ed. 838;" and citing other cases thereunder.
In a case similar to this controversy, the Tenth Circuit held that the obligations of the guarantors under the SBA guaranty under consideration were absolute and unconditional. United States v. Newton Livestock Auction Market, Inc., 336 F.2d 673, 10 Cir. 1964.
In the Newton Livestock Auction case, supra, the SBA mortgagor was required to keep the property (which secured the SBA loan) insured. If it did not, the United States as mortgagee had the option to effect insurance; and the cost incurred was an additional lien against the property. The United States elected not to exercise said option and the insurance lapsed. Since the government assumed the hazard of impairment in value of its collateral, the guarantors assert that, on the theory of assumed risk, they were released, either fully or to the extent of the storm damage.
The Tenth Circuit held, at page 677 as follows:
"Their reliance on `equities' and general principles of law are unpersuasive because their rights and liabilities are fixed by the contracts of guaranty. The risk of the guarantors was not increased because their obligations were absolute and unconditional." Emphasis supplied.
The risk of the guarantor Dubrin was not increased by the plaintiff because the obligations of this guarantor are absolute and unconditional. Emphasis supplied.
IT IS ORDERED that plaintiff is entitled to judgment against defendant William P. Burbridge for the balance due on the note; and, it is further ordered that the Assistant United States Attorney prepare a judgment and submit it to defense counsel for agreement only as to calculation of the amount of the judgment so that a final appealable judgment may be entered.

*1127 APPENDIX I

NOTES
[1] See Appendix I.