In the Matter of OLD ORCHARD IN-
VESTMENT COMPANY, Debtor.

**OLD ORCHARD INVESTMENT COM-
PANY, Debtor in Possession,
Appellee/Plaintiff,**

v.

**A.D.I. DISTRIBUTORS, INC.,
Appellant/Defendant.**

No. G82–91 CA6.

United States District Court,
W.D. Michigan, S.D.

June 27, 1983.

Day, Sawdey, Flaggert & Porter by James B. Frakie, Grand Rapids, Mich., for appellee/plaintiff.

Tolley, Fisher & Verwys, P.C. by Michael C. Walton, Grand Rapids, Mich., for appellant/defendant.

OPINION

HILLMAN, District Judge.

Presently before the court is an appeal from the December 24, 1981, order of the Bankruptcy Court. Appellant, A.D.I. Distributors, Inc., ("ADI") contends that the Bankruptcy Court exceeded its jurisdiction when it permanently enjoined appellant

600

from proceeding with a state court collection action ADI had brought against the individual partners of appellee, Old Orchard Investment Co. ("Old Orchard").

In August of 1980, appellant brought suit in the Circuit Court for the County of Manistee, seeking money damages in the amount of $56,784.73. Defendants in that action were appellee, a Michigan co-partnership, and the individual partners of Old Orchard: John Nedeau, Loy Putney, Richard Schanhals, and Robert Johnson. Nearly a year later, Old Orchard filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. Appellant ceased its state court litigation against Old Orchard, but moved for summary judgment in the state court against the individual partners. The debtor, Old Orchard, moved the bankruptcy court for an injunction or an order staying appellant from proceeding in state court against the individual partners. On December 24, 1981, the Honorable Laurence E. Howard entered an order permanently enjoining appellant from proceeding with its state court collection action.

## DISCUSSION

Rule 801 of the Rules of Bankruptcy Procedures fixes the standard for review of the bankruptcy court opinion. That rule provides:

"Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge the credibility of the witnesses."

This standard entails affirming the judgment of the lower court unless the decision below is clearly erroneous. *In re Bailey's Beautician's Supply Co.,* 671 F.2d 1063 (7th Cir.1982); *In re Adams,* 642 F.2d 173 (5th Cir.1981).

Appellant's argument rests on two premises. The first is that bankruptcy courts are courts of limited jurisdiction. Jurisdiction extends over a debtor and the debtor's property. *Riffe Petroleum Co. v. Cibro Sales Corp.,* 601 F.2d 1385 (10th Cir.1979); *In re Oxford Marketing, Ltd.,* 444 F.Supp. 399 (N.D.Ill.1978); *In re Colonial Tavern, Inc.,* 420 F.Supp. 44 (D.Mass.1976). Jurisdiction extends to third parties only when it is necessary to complete the court's administrative duties. *In re Shirley Duke Associates,* 611 F.2d 15 (2d Cir.1979).

The second premise is that partnerships and partners are separate legal entities. *Liberty National Bank v. Bear,* 276 U.S. 215, 48 S.Ct. 252, 72 L.Ed. 536 (1928); *In re Jercyn Dress Shop,* 516 F.2d 864 (2d Cir. 1975). Appellant argues that the bankruptcy court exceeded its jurisdiction by enjoining the state court collection action against the partners of the debtor-partnership; this error followed from the court's first error of failing to respect the separate legal identities of the partnership and the partners.

There is support for appellant's argument in the case law. *In re Aboussie Bros. Construction Co.,* 8 B.R. 302 (E.D.Mo.1981), concerned a nearly identical problem. In *Aboussie,* after the partnership filed for bankruptcy, the individual partners sought to enjoin collection actions brought against them. The creditor sued the individual partners in their capacities as guarantors of the partnership's debts. The bankruptcy court declined to enjoin the action against the partners, reasoning that:

"This Court sees no reason why the distinct existence of the partnership and its partners should be disregarded in the instant context. This Court may stay suits against the Debtor's property, not that of the individual partners of the Debtor. It is, of course, true that execution upon the judgment against [the individual partners] may impair their ability to contribute funds to the reorganization of the Debtor. Adverse effect upon the Debtor, however, is not sufficient justification for the exercise of jurisdiction over the property of the partners....

To a large extent, any action adverse to the interests of the partners will impair their ability to participate in the reorganization. Though the state litigation in-

volved herein concerns the partners' personal guarantee of partnership debts, the adverse effect upon the reorganization would be the same if the state litigation concerned liability arising out of an automobile accident.... This Court simply does not believe that the bankruptcy of the partnership should be taken to stay all proceedings against the partners thereof."

*Id.* at 303, 304.

Appellant also relies on decisions that refused to enjoin collection actions against non-partner guarantors of a partnership's debt, and actions against an entity owned by a bankrupt. *See, e.g., In re Magnus Harmonica Corp.,* 233 F.2d 803 (3d Cir. 1956); *In re Adolph Gobel, Inc.,* 80 F.2d 849 (2d Cir.1936). Additionally, *Royal Truck & Trailer, Inc. v. Armadora Maritima Salvadorena, S.A.,* 10 B.R. 488 (N.D.Ill.1981), held that a co-debtor of a bankrupt partnership could not be protected from collection actions by reason of the automatic stay barring actions against the partnership.

These cases do not entail reversing the bankruptcy court order here at issue. These opinions are not persuasive for two reasons. First, they accord too little force to the powers enjoyed by a bankruptcy court under section 105 of the Code. Second, they would blur distinctions between the capacities in which partners of debtor-partnerships have been sued.

The scope of authority conferred on the bankruptcy courts by section 105 of the Code is broad. A court is empowered to use its equitable powers where that is "necessary and appropriate" to advance the bankruptcy proceedings, and over things that are "related to" the proceeding.[1] Under section 105, for example, bankruptcy courts have enjoined collection actions against the president of a corporate bankrupt, where that officer was also a guarantor of the corporation's indebtedness. *In re Otero Mills, Inc.,* 25 B.R. 1018 (D.N.M.1982).

The legal relations between a partnership and its general partners explain why actions to collect partnership debts from the individual partners are "related to" a partnership's bankruptcy proceeding. Under partnership law, individual partners are liable for debts incurred by the partnership. *See, e.g.,* M.C.L.A. § 449.15. *See also* 4 *Collier on Bankruptcy,* ¶ 723.02, *et seq.* (15th ed. 1982). Their individual assets are part of the general fund to which partnership creditors look to satisfy partnership debts.

When a guarantor or surety is sued for the debts of their principal, however, different consequences follow. Once the guarantor or surety pays the creditor, the right to demand payment from the debtor only changes hands: it passes from the creditor to the guarantor or surety. *See, e.g.,* 74 Am.Jur.2d *Suretyship* §§ 168, 171 (1974); 38 Am.Jur.2d *Guaranty* § 127 (1968). Furthermore, the payment by the guarantor or surety is not from the debtor's assets; the net pool available thus is not depleted.

The differences between collection from a guarantor and a partner explain why suits to collect from partners should be treated differently by the bankruptcy courts. Collecting partnership debts from a partner, individually, does have repercussions on the debtor-partnership. That does not occur when a guarantor or surety satisfies the debts of a bankrupt partnership.

This distinction is expressed in the Bankruptcy Code,[2] and has been recognized by the courts. *In re Smith,* 14 B.R. 956 (D.Conn.1981) provides one example. In *Smith,* the bankrupt had claimed that a creditor violated the automatic stay by asserting a claim against the bankrupt's guarantor. The court held that the Code did not bar actions to collect from the co-debtors, guarantors, or sureties of a bankrupt. *Id.* at 957–958. This conclusion illustrates the status of persons such as sureties, co-debtors and guarantors: actions against them

---

1. 11 U.S.C. § 105(a) provides that: "The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

2. 11 U.S.C. §§ 509(a), 101(12); *see also* 11 U.S.C. § 362 at n. 4, *infra.*

do not have such direct and immediate consequences upon the debtor or the debtor's estate that actions may not be brought against them.

The status of partners of a bankrupt partnership is shown to be quite different in *In re Landmark Air Fund II*, 19 B.R. 556 (N.D.Ohio 1982). The *Landmark* court found that partners in a bankrupt partnership could, in theory, enjoin actions to collect partnership debts. The partners in that case could not enjoin collection actions because the partnership-debtor could not be successfully reorganized. The court reasoned that actions against the individual partners were permissible only where, as there, the actions would not hurt the partnership by depleting assets the partnership could use toward its reorganization. Clearly, however, had the debtor-partnership in *Landmark* shown signs of life, the court would have enjoined the suits against the individual partners.

*In re Landmark* also discussed the *Aboussie Brothers* decision noted earlier.[3] *Landmark* noted that the scope of power enjoyed by a bankruptcy court under 11 U.S.C. § 105(a) was not at issue in *Aboussie;* rather, the subject was the scope of an automatic stay under section 362. Additionally, the partner in *Aboussie* was sued in his capacity as a guarantor of the partnership's debts, not, as in *Landmark,* strictly in his role as a partner. In brief, the *Landmark* court noted factual distinctions that differentiated its case from *Aboussie* so that *Aboussie* was not pertinent when partners are sued individually for the debts of their partnership.

If partners of a bankrupt partnership may be protected from collection actions, the next issue is the scope of that protection. The *Landmark* court did not reach that issue, but it was discussed in the *Aboussie* opinion. The *Aboussie* court noted that any collection from a partner would deplete the amount of assets a partner would have available to satisfy partnership debts. The *Aboussie* court reasoned that the logic of a rule protecting partners from liability for the partnership's debts would mandate enjoining *all* collection actions against them. Rather than accord partners such protection, the *Aboussie* court declined to bar any collection actions against partners of a bankrupt partnership.

While the *Aboussie* court is correct in noting that any collection from a partner depletes the stock of assets available to satisfy obligations of the partnership, its conclusion is flawed. The *Aboussie* court failed to consider that principles and policies of bankruptcy law fix a logical stopping place to the protection partners may enjoy from collection actions.

There are two rationales underpinning a rule protecting a partner from actions to collect the debts of a bankrupt partnership. One is to protect the integrity of the automatic stay. The other is to uphold the Bankruptcy Code policy of preventing a destructive race-for-assets among creditors.

When a debtor files for protection under the bankruptcy laws, an automatic stay is imposed on all actions to enforce a judgment obtained before the commencement of the bankruptcy case, and any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the bankruptcy proceeding.[4] If the claim brought against the individual partners is one that was or could be filed against the debtor partnership, allowing the creditor to

---

**3.** See p. 600, *supra.*

**4.** 11 U.S.C. § 362 provides in pertinent part: "(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
(3) any act to obtain possession of property of the estate or of property from the estate;
(4) any act to create, perfect, or enforce any lien against property of the estate;
(5) any act to create, perfect, or enforce against property of the debtor any lien to the

collect from the partner without the permission of the bankruptcy court effectively allows the creditor an end-run around the automatic stay.

Additionally, when the assets of a partner are regarded functionally as assets of a partnership, actions against a partner plainly violate another tenet of bankruptcy law. The purpose of bankruptcy proceedings is either to "reorganize" a bankrupt's business, or to marshall its assets for a fair and orderly distribution among creditors. As one court stated:

> "[T]he American bankruptcy laws are intended to ensure that the assets of a bankrupt are efficiently and fairly distributed among its creditors in a single proceeding instead of erratically being dissipated in a number of different lawsuits."

*Cornfeld v. Investors Overseas Services, Ltd.,* 471 F.Supp. 1255, 1269 (S.D.N.Y.); *aff'd,* 614 F.2d 1286 (2d Cir.1979).

 To advance those policies, and to ensure that partners cannot prevent the collection of their personal as well as partnership-related liabilities, I find that partners of a bankrupt partnership may enjoin actions to collect debts that could or have been filed as claims against the debtor-partnership. Claims that could not have been filed against the partnership may not be enjoined, and may be collected through customary proceedings. As the claim brought against the individual partners in the instant case arose exclusively out of the debtor-partnership's business,[5] the bankruptcy court did not err in enjoining appellant's state court action to collect the debt from the individual partners.

### CONCLUSION

For the reasons stated, the order of the bankruptcy court is affirmed and this appeal is dismissed.

extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

(b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;

(2) under subsection (a) of this section, of the collection of alimony, maintenance, or support from property that is not property of the estate;

(3) under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title;

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(6) under subsection (a)(7) of this section, of the setoff of any mutual debt and claim that are commodity futures contracts, forward commodity contracts, leverage transactions, options, warrants, rights to purchase or sell commodity futures contracts or securities, or options to purchase or sell commodities or securities;

(7) under subsection (a) of this section, of the commencement of any action by the Secretary of Housing and Urban Development to foreclose a mortgage or deed of trust in any case in which the mortgage or deed of trust held by said Secretary is insured or was formerly insured under the National Housing Act and covers property, or combinations of property, consisting of five or more living units; or

(8) under subsection (a) of this section, of the issuance to the debtor by a governmental unit of a notice of tax deficiency."

5. Appendix of Appeal, Entry # 6: "Affidavit in Support of Temporary Restraining Order," ¶ 8.