**In the Matter of ST. PETERSBURG HOTEL ASSOCIATES, LTD., Debtor.**

**Bankruptcy No. 82–1065.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 12, 1984.

See also, Bkrtcy., 37 B.R. 341; Bkrtcy., 37 B.R. 380.

Foley, Lardner & Slade, Tampa, Fla., David Fleck, Co-counsel, for debtor.

Zala Forizs, St. Petersburg, Fla., for Bayfront Hotel Corp.

O. Sanford Jasper, Clearwater, Fla., Pinellas County Tax Collector.

Charles Buford, Clearwater, Fla., for Royal Trust Bank.

ORDER ON EMERGENCY APPLICATION FOR AUTHORITY TO BORROW ON SUPER PRIORITY BASIS NOT IN THE ORDINARY COURSE

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 Reorganization case and the immediate matter under consideration is an Application for Authority to Borrow on Super Priority Basis filed by the Debtor, St. Petersburg Hotel Associates, Ltd., (Debtor), a Wisconsin limited partnership, doing business as the Bayfront Concourse. The Debtor seeks the entry of an order pursuant to § 364(d) of the Bankruptcy Code, authorizing the

Debtor to borrow $1,200,000 from Crest Mortgage Chicago, (Crest) a subsidiary of Crest Savings and Loan Association.

An examination of the record reveals that the Debtor's Modified Disclosure Statement was filed on August 3, 1984 and was approved by the Court on September 12, 1984. A hearing to consider confirmation of the Debtor's Plan of Reorganization was scheduled for November 20, 1984. The hearing commenced as scheduled on November 20, but due to time constraints, the hearing was continued to November 24 and was finally concluded on December 1, 1984. Along with confirmation of the Debtor's Plan, the Court considered several other matters including the instant Application for Super Priority Borrowing, a Motion for Rehearing on Order Valuing Collateral filed by St. Petersburg Bayfront Hotel Corporation (Mortgagee), and a renewed Motion to Dissolve Injunction filed by Florida National Bank f/k/a Royal Trust Bank.

The sole asset of this Debtor is a multistory hotel facility located in downtown St. Petersburg, Florida. The hotel was built in 1970 and after repeated financial failures under different management, was acquired by this Debtor on January 22, 1979. The Debtor purchased the hotel from St. Petersburg Bayfront Hotel Corporation (Mortgagee) which corporation holds a first mortgage on the subject property. While it appears that the Debtor's obligation to the mortgagee exceeds $4.5 million in principal alone, the mortgagee holds a secured claim only to the extent of $3.5 million in accordance with this Court's Order of April 25, 1984 on valuation of collateral.

As part of its overall reorganization efforts, the Debtor sought and on December 30, 1983, obtained, court approval to lease 209 hotel rooms to George McDowell. On March 16, 1984, the Debtor filed a Motion to amend the McDowell lease by increasing the number of hotel rooms from 209 to 305 and adding the sixteenth floor, the "Greenhouse Restaurant," "Frenchy's," the main ballroom, "Miss Kitty's" and certain kitchen areas. In turn, McDowell agreed to secure a "Holiday Inn" franchise and the Debtor obligated itself under the McDowell lease to expend approximately $500,000 for capital improvements to bring the hotel to the standards required by Holiday Inn, the franchisor. On April 19, 1984 the Court entered an Order and approved the McDowell Lease, as amended.

On November 9, 1984 the Debtor filed the instant Application for Authority to Borrow on Super Priority Basis pursuant to § 364(d). In support of its Application it is alleged that the Debtor is unable to obtain a loan, either secured or unsecured, from any other source; that the Mortgagee will be adequately protected as required by § 364 if the super priority borrowing is permitted; and, that the borrowing is essential to a successful reorganization by this Debtor. From the proceeds of the loan sought to be obtained, the Debtor proposes to apply approximately $500,000 to improvements which are required to be completed by the landlord under the McDowell lease, and to reserve approximately $600,000 for the payment of delinquent taxes. One hundred thousand ($100,000) is undesignated, however, it was suggested by the Debtor that the ad valorem and tangible property tax assessments may be reduced from $600,000 to $300,000 at which time the Debtor could devote the remaining $300,000 plus the undesignated $100,000 to additional leasehold improvements to the property which although needed to generate additional income are not required by the McDowell lease.

It is the contention of the Debtor that if the Debtor is permitted to borrow on a super priority basis it will be able to complete the improvements under the McDowell lease; that upon completion of the improvements, McDowell will be able to secure the "Holiday Inn" franchise; that the franchise will increase the value of the hotel and the Debtor's equity in the enterprise. Thus, the Debtor contends that the Mortgagee is adequately protected because, based on the foregoing assumptions, the Debtor will be able to repay the principal sum of $1.2 million to Crest within five (5) years at which point the Mortgagee

would be restored to its original position. Further, it is the Debtor's position that the Mortgagee's interest is provided for in the Plan of Reorganization which purports to give the Mortgagee the "indubitable equivalent" of its claim. Therefore, the Debtor contends that the Mortgagee is not impaired and the super priority borrowing should be allowed.

There is absolutely no doubt that the Debtor is unable to secure credit without granting a super priority. The difficulty arises, however, when one analyzes the underlying premises advanced by the Debtor for the proposition that a priority borrowing does not impair the Mortgagee.

An examination of the assumptions relied on by the Debtor which forms the basis for the proposition that the Mortgagee is adequately protected reveals that the assumptions are mere expectations, many of which are highly speculative and unrealistic. For example, it is assumed that the improvements required under the McDowell lease will be completed and the "Holiday Inn" franchise will be in place by February 1, 1985. The validity of this assumption takes on an added significance in light of the undisputed fact that McDowell is not interested in any part of the Debtor's operation if the franchise is not in place by that date and he cannot commence to operate the Hotel as a Holiday Inn. It must also be assumed that the hotel, even as a Holiday Inn, will operate on a positive cash flow basis sufficient not only to satisfy the debt service, but also accumulate sufficient surplus during the five years to meet the balloon payment which will become due at the end of the five years, a fact which is clearly not supported by the record. Rather, it is evident that the hotel will suffer losses for at least two years with no positive cash flow until the third year, if then. Thus, this Court finds it exceedingly difficult to believe that the Debtor will be in a position to retire the 1.2 million dollar loan in five (5) years, thereby restoring the Mortgagee to its first priority position. While there is no doubt that the Mortgagee will realize some benefit from the Debtor's payment of taxes out of the proceeds of the loan, the Court is satisfied that the payment of the taxes is insufficient to compensate the Mortgagee for the loss of its first priority position.

The proposition of non-impairment of the Mortgagee's interest by the priority borrowing is even more doubtful if one considers the current position of the Mortgagee. This Court previously determined that the value of the sole asset of this Debtor, on which the Mortgagee holds a first Mortgage, is 3.5 million dollars. While it is true that the Mortgagee has filed a Motion to Reconsider that value, this Court has no doubt that the Mortgagee is already undercollateralized despite the outcome of the rehearing on valuation—even if granted. Under these circumstances, to permit the Debtor to saddle this property with an additional encumbrance which is superior to the interest of the Mortgagee would clearly operate to further deteriorate the position of the Mortgagee. Therefore, absent compensatory measures which would assure that the Mortgagee's present position is at least preserved, the Application for Super Priority Borrowing must be denied. Accordingly, it is

ORDERED, ADJUDGED and DECREED that the Emergency Application for Authority to Borrow on Super Priority Basis not in the Ordinary Course, filed by St. Petersburg Hotel Associates, Ltd., be and the same is hereby denied.